Robert LONEY, Plaintiff,

v.

David SCURR, Warden of the Iowa State Penitentiary, Rev. Sherbourne Ray, Protestant Chaplain, Iowa State Penitentiary, and Father Gerald Hoenig, Catholic Chaplain, Iowa State Penitentiary, Defendants.

Civ. No. 72–177–2.

United States District Court,
S. D. Iowa, C. D.

July 18, 1979.

Barbara A. Schwartz, counsel and Student Legal Interns Selwyn Dallyn, Cindy Lavorato, Jan Whitacre, Gary Van Cleve, Prisoners Assistance Clinic, Iowa City, Iowa, for plaintiff.

Stephen C. Robinson, Spec. Asst. Atty. Gen., Des Moines, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, Senior District Judge.

This matter is before the Court pursuant to the remand of the United States Court of Appeals for the Eighth Circuit. A review of the lengthy substantive and procedural history of this case is in order.

On April 16, 1975 defendant prison officials filed a "Motion to Reopen and Vacate the Judgment and Dismiss Plaintiffs' Complaint." The motion was brought pursuant to Rule 60(b), F.R.Civ.P. and was directed at the judgment entered in *Remmers v. Brewer*, 361 F.Supp. 537 (S.D. Iowa 1973), *aff'd per curiam*, 494 F.2d 1277 (8th Cir.), *cert. denied*, 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974), in which this Court ruled that the Church of the New Song "is a religion within the ambit of the First Amendment," *id.* at 542. *Remmers* granted appropriate equitable relief entitling Church members to exercise their religion in the Iowa State Penitentiary. The Court overruled defendants' motion, as it had earlier overruled a petition by plaintiffs seeking to invoke the Court's contempt power for alleged failure of prison officials to comply with the *Remmers* decree. *Remmers v. Brewer*, 396 F.Supp. 145, 148 (S.D. Iowa 1975). Both plaintiffs and defendants appealed the Court's post-judgment rulings to the Eighth Circuit. The Circuit remanded the case for further proceedings. *Remmers v. Brewers*, 529 F.2d 656. To understand the issues further, it is necessary to revisit the Court's original findings and conclusions, affirmed by the Eighth Circuit, and the orders of this Court subsequent to the remand of post-judgment rulings.

1. *The Judgment and Decree.* This litigation concerns the attempts of former plaintiff Michael Remmers[1] and plaintiff Robert Loney to gain recognition for the Iowa State Penitentiary "purlieu" of the Church of the New Song (Church). Defendants, the former prison warden, Lou V. Brewer,[2] and prison chaplains Rev. Sherbourne Ray and Father Gerald Hoenig, have resisted recognition of the Church as a bona fide religion. The litigation was originally prompted by the refusal of prison administrators to accommodate plaintiffs' beliefs by affording Church members facilities and time to practice their religion. Plaintiffs thereupon brought this action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, a violation of their First Amendment right to exercise their religion and seeking various forms of injunctive relief. Plaintiffs' pro se complaint was filed seven years ago and in the interim the issues have been before this Court three times and the Eighth Circuit twice.

At the original trial the Court addressed three issues of mixed fact and law: (1) whether the Church of the New Song is a religion entitled to First Amendment protection; (2) whether plaintiffs possessed a "sincere and good faith belief in that creed"; and (3) whether the state had shown a compelling state interest sufficient under the circumstances to deny Church members "the same rights of assembly and worship" enjoyed by recognized faiths at the penitentiary. 361 F.Supp. at 542. The Court held first that the Church was a religion. The holding was predicated on the Court's conviction that great restraint should be exercised in fashioning a constitutional definition of "religion," together with the fact that "Eclatarianism," the pantheistic belief in an all-pervading, harmonizing spirit which is the focus of Church doctrine, "possesses many of the characteristics associated with traditional 'recognized' religions." 361 F.Supp. at 540–41.

With respect to the issue of plaintiffs' sincerity, the Court observed that the State had not shown that plaintiffs' beliefs were insincere or fraudulent. In the face of plaintiffs' professed beliefs, the Court con-

---

1. Remmers is no longer a party to the action.

2. This action now survives against Brewer's successor, Warden David Scurr, pursuant to Rule 25(d), F.R.Civ.P. The Court has substituted Mr. Scurr in the caption as provided by the Rule.

cluded "there is simply insufficient evidence to support the contention that plaintiffs' beliefs are not sincere and genuinely felt." 361 F.Supp. at 542.

Because the Church was a religion within the broad sweep of the First Amendment, and also because the sincerity of plaintiffs' commitment to the Church could not be objectively questioned, the Court proceeded to the third issue which implicated a balancing of the State's strong interest in the orderly administration of its prisons with the plaintiffs' First Amendment right to practice their religion. Plaintiffs have never sought an unrestricted right to pursue Eclatarianism, and have only requested an opportunity to "exercise their religion in the same degree as other inmates, Protestant and Catholic." 361 F.Supp. at 542. Prison administrators, however, have consistently insisted on complete non-recognition of the Church, an uncompromising alternative that would require some showing of a threat to the institution's vital interests. There was no evidence that the tenets of the Church counseled violence or defiance of authority, nor was there evidence linking Church activities to disturbances at the prison. Thus the prison's refusal to grant the Church privileges and facilities like those of recognized religious groups was predicated on "unsubstantiated anxieties." 361 F.Supp. at 542.

However, the Court was very aware of the real possibility savvy prison inmates might employ the First Amendment as a pretext to wring concessions and privileges from the prison administration in furtherance of objectives both nonreligious and inimical to penological interests. The Court therefore concluded with the following caveat:

> The Court is well aware of the possibility that the Church of the New Song may be only a sham religion created to serve as a convenient vehicle for the presentation of political claims. But the as yet unsubstantiated anxieties of this Court cannot justify the possible suffocation of religious freedoms. If the Church of the New Song should prove to be a hoax and

front that the state claim it is, that eventuality can be dealt with by both the prison administration and this Court. Nor should it be thought that by granting the Eclatarians religious rights the prison administration is laying itself open to uncontrollable hazards. The prison administration has a strong interest in seeing that the facilities and benefits enjoyed by the Church of the New Song are not abused or used for other than religious purposes. Meetings can be observed or mail monitored to see that this is the case. Given the power vested in prison authorities to take reasonable precautions to prevent potential abuses, any phoney believers should find their jest most unrewarding.

361 F.Supp. at 542–43.

2. *The First Appeal.* Plaintiffs and defendants appealed, the former on grounds not here pertinent. The Eighth Circuit held this Court's conclusion that the Church is a First Amendment religion was not clearly erroneous or contrary to law. 494 F.2d at 1278. With respect to the other two issues, the Circuit said:

> Further there is insufficient evidence in this record to establish appellants' contention that appellees' beliefs are not sincere and genuinely felt. It also appears that appellees have not been allowed a fair and meaningful opportunity to freely exercise their religion in the same degree as other inmates, Protestant and Catholic. The district court's order requiring that this situation be corrected is affirmed.

*Id.* Certiorari was subsequently denied by the Supreme Court. 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286.

3. *Defendants' "Petition to Reopen and Vacate Judgment and Dismiss Plaintiff's Complaint."*

As noted, each side has filed a post-judgment motion, and the substance of neither has been resolved. Plaintiffs' "petition for rule to show cause why defendants should not be punished for contempt" still pends on remand from the Circuit and has abided resolution of plaintiffs' motion and resubmitted motion to "reopen and vacate judg-

ment and dismiss plaintiffs' complaint." Plaintiff's motion has been the subject or proceedings since remand.

Defendants filed their original motion April 16, 1975, and an amendment on May 12, 1975. By order entered June 12, 1975, the Court overruled the motion. 396 F.Supp. at 148. Defendants appealed. Plaintiffs appealed from an earlier order declining to hold prison officials in contempt. The appeals were consolidated.

Defendants predicated their motion on the Court's caveat in its original memorandum that if in practice the Church should prove to be a "hoax and a front" for political or the prisoners' own private ends the Court was prepared to deal with the eventuality. Defendants also armed themselves with two district court cases involving the Church's founder, Harry W. Theriault (a federal penitentiary inmate), holding that the Church was not a religion and was primarily a political group. *Theriault v. Silber*, 391 F.Supp. 578 (W.D.Tex.1975), *later vacated and remanded*, 547 F.2d 1279 (5th Cir.) *cert. denied*, 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977), *on remand*, 453 F.Supp. 254 (W.D.Tex.), *appeal dismissed*, 579 F.2d 302 (5th Cir. 1978), *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 468 (1979); *Theriault v. Establishment of Religion on Taxpayers' Money*, CV. 70-186-D (E.D.Ill.1975). In overruling defendants' motion, the Court concluded that defendants' factual allegations and supporting material did not warrant reconsideration of the religion issue, call into question plaintiffs' sincerity, or indicate that the Church was a hoax as it operated at the Fort Madison penitentiary. The Court declined to follow the Texas and Illinois district courts because of the possibility of appeal and, more importantly, the facts in those cases involving Theriault were simply not the facts in this case.

4. *The Circuit's Remand.* Both plaintiffs and defendants took appeals from the Court's post-judgment rulings to the Eighth Circuit. The Circuit remanded the cause. With respect to plaintiffs' attempts to hold defendants in contempt, which focused on the access of maximum security unit and hospital prisoners to Church ministers, the Circuit felt that a further evidentiary hearing was in order. 529 F.2d at 658. With the Court's overruling of defendants' attempts to vacate the judgment, the Eighth Circuit had no quarrel. *Id.* at 658. However, the State improperly had presented affidavits to the Circuit which this Court had not had an opportunity to consider. *Id.* at 659. The Circuit therefore remanded the cause to enable further consideration in the light of defendants' supplemental affidavits. The terms of the remand were as follows:

> The cause is remanded to the District Court for further proceedings consistent with this opinion. The District Court may, in its discretion, first determine whether the state's new allegations are sufficient to justify reopening the issue of whether the Church of the New Song is a religion within the scope of the First Amendment. Should it find that the allegations are sufficient, it should then proceed directly to determine the underlying issue. Should the District Court find that the affidavits do not justify an additional hearing or, after a hearing, reaffirm the protective status of the Church of the New Song under the First Amendment, it shall then determine, in the light of this opinion, whether additional opportunities for access to ministers of their faith must be afforded the members of the Church of the New Song incarcerated in the Iowa State Penitentiary.

*Id.*

5. *Proceedings Since Remand.* On May 5, 1976, defendants filed the pending "Petition to Reopen and Vacate Judgment and Dismiss Plaintiffs' Complaint."[3] After a hearing and consideration of the affidavits referred to by the Circuit, the Court initial-

---

**3.** The Circuit, though it remanded, actually affirmed the Court's order overruling defendants' first such motion. The remand simply indicated that the Court in its discretion could

determine whether the State's new allegation warranted reopening. Hence a second motion by defendants was the appropriate vehicle to bring the issue before the Court.

ly determined that defendants' offer was "wholly void of any allegations which negate the Court's original finding that the Church of the New Song is a religion for First Amendment purposes." May 20, 1976 Order, at 2. That aspect of defendants' motion was accordingly overruled.

However, defendants' affidavits and plaintiffs' counter affidavits created a factual issue as to whether the Church and its members were abusing their First Amendment privileges. The Court therefore concluded that

a reopening of this case is proper solely for the purpose of taking evidence on the question of how the Church has conducted itself at Fort Madison, and whether that conduct is sufficiently threatening to the orderly operation of the prison that the Court should prescribe limitations on and permissible and impermissible Church conduct in the future.

May 20, 1976 Order, at 3. The Court also reopened discovery and indicated that an evidentiary hearing would be had when the parties were prepared.

Defendants, as they have consistently done, continued to press the Court to focus on the issue of whether the Church of the New Song is a religion entitled to First Amendment protection. On February 1, 1977, they filed an amendment to their motion resurrecting for the third time the question of the status of the Church as a religion. Defendants submitted yet another round of church programs, court documents, and statements of varying sorts in support of their claims.

By order entered March 23, 1977, the Court relented and permitted defendants "an opportunity in the forthcoming hearing to supplement the record with any and all available evidence which purportedly shows that the Church of the New Song is not a religion for First Amendment purposes." March 23, 1977 Order, at 1. The Court stressed, however, that the burden was entirely on defendants. As a result of the March 23 ruling, the three critical issues in the lawsuit were once again open for the receipt of evidence.

The Court referred the cause to the United States Magistrate[4] with directions to schedule and preside over the pending evidentiary hearing, and at the completion thereof, to convey the evidentiary record to the Court.

Numerous discovery disputes erupted between the parties. Eventually, however, the matter was submitted in nine days of evidentiary hearings in October and November 1977. Pursuant to the Court's order of reference, the Magistrate permitted the parties wide latitude in the offer and introduction of evidence. Though not required to do so, plaintiffs as well as defendants introduced evidence. After preparation of a transcript and the filing of a statement of facts and briefs by the parties, the Court heard arguments on defendants' motion on April 9, 1979.

## II.

### A.

The parties have raised a mutual issue with respect to who has the burden of proof and what the requisite standard of proof is. Plaintiffs assert defendants have the burden on a clear and convincing evidence standard; defendants find in the prior orders of this Court and Circuit remand an indication that the plaintiffs have the burden as if the case were being tried anew.

Defendants brought their post-judgment motion under Rules 60(b)(5) and (6). The motion seeks re-examination of the three key issues in this case in the light of changes in decisional law and/or operative facts occurring after the Court's injunction permitting the Church to function equally with other religious groups. Under these circumstances, defendants' motion most appropriately (though not exclusively) sounds under Rule 60(b)(5) as seeking relief because "it is no longer equitable that the judgment should have prospective application." *See System Federation v. Wright,* 364 U.S. 642, 646–50, 81 S.Ct. 368, 5 L.Ed.2d

---

4. The Honorable R. E. Longstaff, United States Magistrate for the Southern District of Iowa.

349 (1961); *United States v. Homestake Mining Co.*, 595 F.2d 421, 427 (8th Cir. 1979); *Theriault v. Smith*, 523 F.2d 601, 601–02 (1st Cir. 1975); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863, at 209–10 (1973). It has never been doubted that the movant has the burden to establish facts sufficient to shift the equities in favor of relief from a decree under Rule 60(b). *See Humble Oil and Refining Co. v. American Oil Co.*, 405 F.2d 803, 813, 821 (8th Cir.), *cert. denied*, 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969). *See also Clarke v. Burkle*, 570 F.2d 824, 830 (8th Cir. 1978). Whether to grant relief under Rule 60(b) is vested in the district court's sound discretion and it logically follows that the standard of proof for a movant is merely such as would support the favorable exercise of discretion. *Clarke v. Burkle, supra* at 830. The remand of the Circuit and the subsequent orders of this Court "reopening" the issues do not alter the well-established substantive and procedural rules governing motions under Rule 60(b). In any event, the dispute over burden of proof and the standard of proof is problematical. If plaintiffs had the burden, they satisfied it. If defendants had the burden, they failed, under any evidentiary standard, to establish facts sufficient to gain relief from the Court's judgment.

### B.

Defendants' motion to vacate judgment will be overruled in its entirety. The Court has carefully reviewed the extensive evidence on remand. Since the cause is before the Court on a motion for relief under Rule 60(b), F.R.Civ.P., it is not necessary for the Court to make comprehensive findings of fact and conclusions of law. *See* Rule 52(a), F.R.Civ.P. Nor is it necessary for the Court to recite the evidentiary record in memorandum form. The Court has considered the statements of facts submitted by the parties, and it considers the plaintiffs' statement to be an accurate and fair reflection of the record. The Court adopts plaintiffs' July 31, 1978, statement of facts as its own.

The Court will therefore review only that evidence it considers persuasive to the exercise of its equitable discretion under Rules 60(b)(5), (6), F.R.Civ.P.

*Is the Church of the New Song a Religion?*

The record on record on remand does not warrant any departure from the Court's prior judgment that the Church of the New Song is a religion protected by the First Amendment.

■ Defendants rightly are concerned about the potential disruptive influence a primarily (though not entirely) inmate-inspired religion might have, and only the most doe-eyed idealist would fail to harbor subjective suspicions about the motives of the leadership of the Church and its members. But defendants legal approach has the wrong focus. If as an organization the Church of the New Song operates as a front for political objectives, the remedy, unless it is pervasively pretextual, is not an overbroad judicial declaration that the Church is not a religion affecting the sincere as well as the insincere, and persons within and persons without the prison. If the Church is to be subjected to restrictions on its organized activities other religious groups are not subject to, the reason must be because its activities demonstrate that its objectives or behavior in the institution are "inconsistent with [Church members'] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system," *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *see Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129–30, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), not because the Church is beyond the pale of the First Amendment. Whether a belief is a religion is, as this Court originally noted, a "threshold determination" embracing a "wide latitude." 361 F.Supp. at 540.

■ The substantive law pertinent to whether the Church is a First Amendment religion has not changed appreciably since this Court's 1973 ruling. "[A] succinct and comprehensive definition of that concept

would appear to be a judicial impossibility." 361 F.Supp. at 540. But it is at least clear that if a group (or an individual) professes beliefs which are similar to and function like the beliefs of those groups which by societal consensus are recognized as a religion, the First Amendment guarantee of freedom of religion applies. *See Welsh v. United States*, 398 U.S. 333, 340, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (plurality opinion); *United States v. Seeger*, 380 U.S. 163, 165–66, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (both cases involving the meaning of the phrase "religious training and belief" in the conscientious objector portion of the Universal Military Training and Service Act);[5] Note, Toward a Constitutional Definition of Religion, 91 Harv.L.Rev. 1056, 1066–67 (1978). In its memorandum opinion, this Court observed that the Church "possesses many of the characteristics associated with traditional 'recognized' religions." 361 F.Supp. at 541. The record on remand reaffirms that finding.

■ The Church of the New Song has a formal structure not unlike many recognized religions. Each congregation or chapter is called a "purlieu". A "coadjutor" is in charge of the purlieu and a "votery" of Church leaders sets Church policy and makes administrative decisions like the governing bodies of countless churches in this country. There is a church hierarchy consisting of lay members, revelation ministers and sealed revelation ministers. Services, called "Free Exercise Seminars," are scheduled weekly and follow an informal format of music, discussion of topics of interest, readings from the "Paratestament" (the Church's equivalent of the Bible), and occasionally comments from a guest speaker. This structure is more than formal. The evidence shows that it functions and that the Church purlieu at the penitentiary is in fact governed thereby.

In the lives of its members, the Church also fills a need in a manner characteristic of more traditional religions. It has a system of beliefs and announced tenets to guide members' daily lives. The Church affords its members a sense of self-worth and inspires a sense of community. These latter two functions are evident in the testimony before the Magistrate of Church members David Dowell, Michael Rinehart, and plaintiff Loney. Church beliefs are articulated in the "Paratestament" and feature belief in a spirit or power called "Eclat," a persuasive source of spiritual life. Eclatarians purport to discourage violence and hate and preach a philosophy that members should "do their own thing," to the extent they do not interfere with others. Thus Eclatarian beliefs urge a mode of conduct which, if followed, is not facially incompatible with the security of a prison and penological objectives.

Eclatarianism also has social and political overtones which reveal very much that it is a faith evolved by those who feel victimized by their circumstances. The Church favors democratic though radical social change, and, in general, an end to prisons. Church members are taught to fight the "good fight of faith" in an effort to transcend prison environment.

Of particular interest to the Court was the expert testimony of two professors of religion, one for plaintiffs and one for defendants. Plaintiffs' expert, Professor of Religion George Forrell of the University of Iowa, offered a functional definition of religion composed of: (1) a cognitive element—belief in the truth of certain things; (2) moral dimension—belief in the rightness or wrongness of certain behavior; (3) religion must provide an emotional experience; and (4) religion creates a community. In Forrell's opinion the Church of the New Song satisfied each of these elements and was comparable to the Quakers as a mystical

---

5. The Supreme Court has appeared to give "religion" and "religious" an expansive meaning in both the statutory and First Amendment free exercise contexts, and this Court does not believe *Welsh, Seeger* and like cases can be distinguished on the ground that they involved the interpretation of a statute. *See Torcaso v. Watkins*, 367 U.S. 488, 495 n. 11, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (indicating that belief in the existence of God is not critical to status as a "religion" under the First Amendment).

religion. He summarized: "[The Church of the New Song] is a religion which essentially is pantheistic and highly focussed in the emotional support it gives it members." T. at 765.

Professor of Religion John McCaw of Drake University testified for defendants. Professor McCaw also identified four elements in his definition of religion: (1) a body of beliefs and doctrines; (2) worship, including ritual and cultic practices; (3) structure including "polity or governance"; and (4) continuity in the sense that a movement should exist for at least one generation to prove its viability. Professor McCaw opined that the Church of the New Song satisfied the first three elements but was lacking in the fourth.[6]

Obviously, whatever the merits of Professor McCaw's fourth element as a theological definition, the First Amendment is not ineffective until a purported religion survives the rigors of persecution, suppression, or even disinterest, for a generation. If McCaw's fourth element is excepted as constitutionally inappropriate, the Church of the New Song is also a religion by his definition.

Lastly, the Court has carefully reviewed the testimony of defendant Reverend Sherbourne Ray. Reverend Ray stated his opinion that the Church was not a religion, but an effort to change the prison system. On cross-examination, however, Reverend Ray identified a memorandum he sent to former Warden Brewer on March 8, 1972, in which Ray set, forth a three-part test to "qualify as a church in the religious sense: 1. A statement of doctrine or principles. 2. Endorsed by a group of believers. 3. Directed by a coordinating person or leader duly ordained by the governing body." T. at 292. After the Church of the New Song was permitted to function by court order and by the time of the Fall 1977 hearings, Reverend Ray conceded that the Church

had come to satisfy the criteria he articulated in 1972. T. at 293.

■ By these three varied yet related definitions, the Church of the New Song qualifies as a "religion". Certainly the First Amendment is as broad, and probably broader, than a purely theological definition of religion. In one First Amendment free exercise case the Supreme Court categorized "Buddhism, Taoism, Ethical Culture, [and] Secular Humanism" as religions (none of which espouse a belief in the existence of God), *Torasco v. Watkins*, 367 U.S. 488, 495 n. 11, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). And, in a case involving the Church of the New Song, the Fifth Circuit held improper a definition of religion that would exclude "agnosticism or conscientious atheism." *Theriault v. Silber*, 547 F.2d at 1281. In the Selective Service cases the Supreme Court has held that what is religious is determined by the function of beliefs, and includes "intensely personal" convictions which "function as a religion" in an individual's life. *Welsh v. United States*, 398 U.S. at 339, 90 S.Ct. 1792; *United States v. Seeger*, 380 U.S. at 185–86, 85 S.Ct. 850. That a religion may be formed in response to social or political factors or may advocate political goals does not mean that it is not entitled to First Amendment protection, *see Welsh v. United States*, 398 U.S. at 342, 90 S.Ct. 1792, though in a prison environment compelling countervailing state interests may justify restriction of the organized exercise of beliefs to the extent they are inconsistent with legitimate state interests in the operation of its prison system. *See, e. g., Pell v. Procunier*, 417 U.S. at 822, 94 S.Ct. 2800; *United States v. Ballard*, 322 U.S. 78, 86–87, 64 S.Ct. 882, 88 L.Ed. 1148 (1944); *Teterud v. Burns*, 522 F.2d 357, 362 (8th Cir. 1975); *Proffitt v. Ciccone*, 506 F.2d 1020, 1021 (8th Cir. 1974); *Sharp v. Sigler*, 408 F.2d 966, 970 (8th Cir. 1969).

---

**6.** Professor McCaw also concluded that the Church was "a political movement in religious trappings. T. at 978. Though the Church is entwined with what could be termed political concerns, the Court cannot say that in purpose the political predominates over the spiritual.

The testimony of both Forrell and McCaw, if not common knowledge, illustrates that many religious groups pursue political and social objectives. The Court recognizes also that the line between what is political rather than religious is indistinct at best.

Defendants point out that four district courts have in fact held that various permutations of the Church of the New Song are not a religion. *See Theriault v. Silber,* 453 F.Supp. at 265; *Hundley v. Sielaff,* 407 F.Supp. 543, 545 (D. Ill.1975); *Brooks v. Edwards,* No. 74–362–CRT (D. N.C.1975); *Theriault v. Establishment of Religion on Taxpayers' Money,* CV–70–186–D (E.D. Ill. 1975). The Court has carefully reviewed each of these cases and finds that they are neither persuasive nor controlling. In each case the plaintiff or plaintiffs apparently proceeded pro se. As a result, none of the above courts had before them a record as well-developed as the record in this Court has for consideration, not to mention the advantage of the diligent assistance of counsel. Unlike this Court's findings and conclusions, none of the findings and conclusions in the above cases were reviewed and affirmed by an appellate court.[7] To the extent the reasoning in other district courts is at odds with this Court's analysis, the Court finds those cases unpersuasive. In some instances other courts have muddled the distinct questions of whether the Church is a religion, with the question of what limitation may permissibly be placed on the congregation exercise of the Church of the New Song in a prison environment. Lastly, the above cases to a substantial extent turned on facts different from those before this Court.

For the foregoing reasons, the Court concludes that sufficient cause has not been shown why the Court should depart from its original holding that the Church of the New Song is a religion.

*Are plaintiffs and other members of the Church of the New Song Sincere?*

█ The Court has reviewed with deep interest the contentions of the parties on this issue. Defendants rely on the following to show the insincerity of Church members: First, "[p]laintiffs' own lives demonstrate they do not follow what they testify the Church teaches. . . ." Defendants' Reply Brief at 10. Defendants assert in essence that the fact Church members are criminals, including violent ones, and on occasion have violated prison regulations belies the pacific tenets of the Church governing conduct. Aside from the overbroad generalization, by such a standard it is undoubtedly true that no religious group in the prison could claim its members were sincere. Second, though defendants' precise focus is unclear, it appears they also challenge the sincerity of the Church as a result of two specific instances of prisoner conduct purportedly attributable to the Church; and the secular nature (at least by traditional measurement) of the weekly Free Exercise Seminars or Church services.

With respect to the former two, defendants point to a May 22, 1977, episode in which Protestant services were disrupted by a noisy group of inmates who invaded the prison chapel resulting in a near confrontation. Among the disrupters some Church leaders were present, as well as many who were apparently unconnected with the Church. No property damage or personal injury resulted and the nonworshippers eventually departed. Defendants also refer to a May 9, 1977 New Song service in the then new All-Faiths Chapel in which property damage resulted to the new furnishings. The Church governing body, or votery, had previously expressed displeasure with rules against drinking coffee or smoking in the chapel, feeling that the rules depressed a feeling of fellowship. During the service unidentified individuals apparently ignored the no-smoking rule, and afterward there were cigarette burns on the carpet and several chairs were in disarray. Plaintiff Loney and the Church leadership later declined to reimburse the prison for the cost of repairs to the carpet.[8] Lastly, defendants appear to assert that the conduct of Church services with time devoted to discussion of problems with the prison

---

7. An appeal was taken in *Theriault v. Silber,* but the notice was dismissed because it contained pejorative references to the trial judge. 579 F.2d 302.

8. As a form of protest, plaintiff Loney and another inmate later hid out in the institution for four days before turning themselves in.

**1196**

administration, small group discussion, and the playing of popular music illustrates that the Church is a pretext to permit the gathering under official sanction of large numbers of inmates for political or other purely secular purposes.

The two incidents involving Church members in May 1977, if indeed they may be attributed to the Church, might well have warranted appropriate disciplinary action against those who participated; but standing alone in the six-year history of the Church at the penitentiary, they do not constitute compelling objective evidence of the depth of Church members' beliefs. Nor does the fact that Church services often contain political and social activity consistent with the Eclatarian struggle to overcome the emotional vicissitudes of incarceration indicate to the Court that the Church is a pretext. Church services have also consistently contained elements devoted to readings and discussion of the Paratestament and occasionally the Bible.

Sincerity, as with any question of state of mind, often turns on inferences from objective fact. As noted, the objective facts in this record are inconclusive. There is, however, extensive testimony in the record on the part of Church members David Dowell, Michael Rinehart, and plaintiff Rob Loney. Each is or was a Church minister and leader. The Court has reviewed with interest the measured description each of these inmates gave of the history, function and organization of the Church and their participation in it during the four years preceding the 1977 hearings. This testimony at least outwardly is that of persons who sincerely believe in the precepts of Eclatarianism. As it did in 1973, the record reflects "insufficient evidence to support the contention that plaintiffs' beliefs are not sincere and genuinely felt." 361 F.Supp. at 542.

*Have Defendants shown that the Church of the New Song is disruptive of penological objectives sufficient to permit a complete ban on the practice of the religion?*

Freedom to exercise one's religion is a fundamental right. *Wisconsin v. Yoder*, 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Absent compelling justification, a state may not discriminate between religions in terms of the burden it places on their exercise. *See Johnson v. Robinson*, 415 U.S. 361, 384, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), *quoting Gillette v. United States*, 401 U.S. 437, 462, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). Thus this Court's simple judgment entry embraces a general fundamental principle: New Song members must have "the right to exercise their religion equally with other religions." The Church is not entitled to greater rights and privileges than other recognized religious groups, and this equality standard is of course subject to a rule of reason demanding substantial, not literal equality. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Moreover, the free exercise of religion has two aspects—the freedom to believe, which is absolute, and the freedom to practice, which is not. *See, e. g., Kennedy v. Meacham*, 540 F.2d 1057, 1061 (10th Cir. 1976). It is clear that the First Amendment does not afford a shelter for conduct at odds with prison security, order or rehabilitation. *Pell v. Procunier*, 417 U.S. at 822, 94 S.Ct. 2800; *Guajardo v. Estelle*, 580 F.2d 748, 760 (2d Cir. 1978). Further, in determining what activities are inconsistent with penological objectives, much must be left to the judgment of prison administrators. *See Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). However, even in prison, when a state seeks to completely prohibit organized exercise of a religion thus directly quashing an otherwise fundamental right, the Constitution requires justification beyond those "founded only on fear and apprehension." *Teterud v. Burns*, 522 F.2d at 361–62. At a minimum, defendants must show that denial of the organized exercise of the New Song religion furthers substantial governmental interests in security, order, and rehabilitation, and "the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez*, 416 U.S. at 413, 94 S.Ct. at 1811.

*See Jones v. North Carolina Prisoners' Union,* 433 U.S. at 133, 97 S.Ct. 2532 (in which First Amendment rights were not heavily implicated); *Burgin v. Henderson,* 536 F.2d 501, 503 (2d Cir. 1976). Defendants have failed to satisfy either prong;[9] indeed, on this record there is no reasonable ground on which to vacate the Court's judgment.

The Court will briefly summarize. The record fails to reflect any substantial relation of the Church of the New Song to any personal injuries or property damage in its now six-year history at the institution. The Eclatarian belief in self-worth, nonviolence, and a sense of belonging is hardly inimical to penological objectives. The evidence does reflect that individual New Song members have on occasion violated prison regulations in both violent and non-violent respects; but there is no evidence to suggest that the connection between the Church and the misbehavior in question on these occasions is other than coincidental. There is countervailing evidence that Church members have defused potentially explosive situations in the prison, and it is clear that the Church has helped some inmates cope with incarceration. Church services have, it is true, been the forum for complaints about various aspects of prison life, and the discussion of prison reform. Other church groups at the penitentiary, however, have in their religious programs involved discussions about civil rights, race relations, relations between guards and inmates, and complaints about prison life, all apparently tolerated by the prison administration. In sum, there is insufficient evidence to support a finding that a ban on the Church of the New Song would further the substantial state interest in security, order and rehabilitation.

In any event, a complete ban on organized Church activities is vastly overbroad. It seems to the Court that defendants' legitimate fear about the Church is that it potentially provides a forum for prisoner agitation against the "system," and could serve as the focal point for concerted overt or covert prisoner action threatening the security of the institution and the safety of inmates unwilling to become Church members. The record does not show that in purpose or effect the Church has functioned in this manner, but the potential is real as it is with any recognized prisoner group. The Supreme Court's recent pronouncements in *Jones v. North Carolina Prisoners' Union* make clear that prison administrators need not tolerate under the First Amendment organizations of prisoners by whatever description to the extent "the focus is on the presentation of grievances to, and encouragement of adversary relations with, institutional officials . . . ." 433 U.S. at 133, 97 S.Ct. at 2542. If the Church of the New Song has this focus, and the record does not indicate that it is primarily so oriented, prison officials can deal with the matter by neutral, reasonable regulation far short of a complete ban on all New Song activities. Nothing in this Court's initial opinion and order robs prison officials of the informed discretion they clearly enjoy. *See* 361 F.Supp. at 542–43. The Church of the New Song is simply and only to be accorded the same treatment accorded other recognized religions, with respect to both privileges and restrictions.

It follows that defendants' Rule 60(b) motion will be overruled.

### III.

In its March 23, 1977 order the Court held in abeyance the "free exercise" issue also remanded by the Eighth Circuit, *viz.* whether maximum security unit inmates are entitled to additional opportunities for access to ministers of the New Song faith. *See* 529 F.2d at 658–59. No evidentiary hearing has been held on this issue pending resolution of the question of the Church's protected status. By today's order the Court reiterates

---

**9.** The Court notes that plaintiffs availed themselves of the opportunity to introduce evidence in opposition to defendants' motion. Even were the burden on the pending Rule 60(b) motion on plaintiffs as defendants argue, the Court would conclude that plaintiffs have established that a total ban on Church activities does not significantly further a substantial governmental interest, and is vastly overbroad.

**1198**

its initial findings and conclusions, and, ordinarily, the remand would still pend on the unresolved issue of maximum security unit prisoners' opportunities to visit with New Song clergy. However, it has now been three and one-half years since the Circuit's remand, the prison administration has changed, and to the Court's knowledge the maximum security unit and the regulations which govern it have also changed with the passage of time. Thus, the issues raised in plaintiffs' 1974 contempt petition are possibly moot, and very likely the underlying facts are significantly different. Under these circumstances the Court will overrule plaintiffs' pending motion. The Court stresses, however, that in so ruling the Court in no way intends to prejudice plaintiffs from initiating a separate and new cause of action embracing the same or similar allegations if appropriate.

Accordingly,

IT IS HEREBY ORDERED that defendants' "Petition to Reopen and Vacate Judgment and Dismiss Plaintiffs' Complaint" is overruled.

IT IS FURTHER ORDERED that plaintiffs' "Petition for Rule to Show Cause Why Defendants Should Not Be Punished for Contempt" is overruled.