620 F.2d 648
 CHURCH OF the NEW SONG et al., Plaintiffs-Appellants,
v.
ESTABLISHMENT OF RELIGION ON TAXPAYERS' MONEY IN the FEDERAL
BUREAU OF PRISONS et al., Defendants-Appellees.
Dr. Harry W. THERIAULT, etc., et al., Plaintiffs-Appellants,
v.
ESTABLISHMENT OF RELIGION ON TAXPAYERS' MONEY IN the FEDERAL
BUREAU OF PRISONS et al., Defendants-Appellees.
 No. 79-1649.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 1, 1980.
Decided May 13, 1980.
 
 John S. Elson, Northwestern University Legal Clinic, Chicago, Ill., for plaintiffs-appellants.
 James M. Cole, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before CUMMINGS, SPRECHER and CUDAHY, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 Plaintiffs object to the district court's dismissal of their First Amendment suit, arguing that the court impermissibly relied on the doctrine of res judicata. We find the dismissal proper and affirm the judgment below.
 
 
 2
 * Harry W. Theriault, the founder and chief exponent of the Church of the New Song, is a federal prison inmate who has a protracted history of litigation in the federal courts concerning the exercise of his faith in prison. Indeed, it appears that almost all of the followers of his faith are prison inmates. On June 18, 1970, Theriault and a fellow inmate at the Atlanta, Georgia penitentiary filed suit against the Catholic and Protestant chaplains at that penitentiary for allegedly depriving them of their constitutional right freely to practice their religion.[1]
 
 
 3
 Subsequent to filing suit in Georgia, Theriault was transferred to the federal penitentiary in Marion, Illinois. Shortly after the transfer, on September 30, 1970, he filed suit in the district court for the Eastern District of Illinois against a Protestant and a Catholic chaplain at Marion. As in the Georgia suit, he again alleged the violation of his First Amendment rights.[2]
 
 
 4
 On March 17, 1971, Theriault filed another suit, this time in the district court for the District of Columbia. In his complaint he alleged generally the violation of prisoners' First Amendment rights throughout the federal prison system. The District of Columbia suit was transferred to the Eastern District of Illinois and consolidated with the suit pending against the Marion defendants.
 
 
 5
 On February 25, 1972, the district court for the Northern District of Georgia issued an opinion in the Atlanta case. Theriault v. Carlson (Theriault I), 339 F.Supp. 375 (N.D.Ga.1972). That court's findings of fact are particularly important to the disposition of the present appeal. In reaching its conclusion that the Church of the New Song was a religion entitled to First Amendment protections, a conclusion which was ultimately reversed by the Fifth Circuit Court of Appeals, see Theriault v. Carlson, 495 F.2d 390 (5th Cir. 1974), the Theriault I court considered the testimony of some Marion officials:
 
 
 6
 Immediately after the petition was allowed filed in this court, Theriault was transferred to Marion which houses the most severe security risks in the federal system. Theriault now began to take his own religious claims seriously and attempted to explain them to the prisoners and staff at Marion. The Chief of Classification and Parole at Marion testified in this court that, at this point, Theriault's activities were truly religious in nature. Theriault approached the Protestant chaplain at Marion for permission to hold religious services for himself and his followers, but the request was denied because the chaplain felt the Church of the New Song was not "recognized." Theriault attempted to meet this objection by assuring the chaplain he would obtain an official church charter from the Universal Life Church, Inc., the mail-order organization which supplied Theriault with his "doctor of divinity" degree. The chaplain brought the matter to the attention of respondent Silber, and Rev. Silber testified in court that he upheld the decision of the Marion chaplain because the Church of the New Song and the Eclatarian faith were not "recognized." Theriault also wrote to respondent Carlson but received only a form response directing him to the institutional staff.
 
 
 7
 As Theriault continued his activities among the Marion prisoners, the staff began to suspect that he was actually organizing a radical political movement. One staff member filed a memorandum on the subject and urged that something be done to control Theriault's activities. Three days after the memorandum was filed, Theriault was placed in punitive segregation ("H-Unit") for failing to obey the order of a security officer to move. He was subsequently released and later cited for a minor violation and for threatening a security officer. On April 1, 1971 Theriault approached Mr. J. Culley, a correctional supervisor, and demanded a place to hold religious services. Culley discussed the matter with Theriault but refused to accede to his demand. Then, "as a preventive measure," Culley had Theriault placed in punitive segregation ("H-Unit"). Theriault remained in H-Unit from that night until he was transferred to Atlanta for the hearings before this court. The day Theriault was received back in Atlanta he was immediately placed in the segregation unit and he is still there today. The court finds as fact that the sole basis for the punitive segregation of Theriault was his demand to hold religious services.
 
 
 8
 Theriault v. Carlson (Theriault I), 339 F.Supp. 375, 378-80 (N.D.Ga.1972) (footnotes omitted).
 
 
 9
 A few days after the decision in Theriault I, Theriault was transferred to the federal penitentiary in LaTuna, Texas, where he was again subjected to intermittent segregative confinement because of his insistence, accompanied by physical violence, that he be allowed to use the prison chapel for services without prior approval from the prison chaplain. On August 17, 1972, Theriault filed a First Amendment suit in the District Court for the Western District of Texas, alleging more violations of his First Amendment rights.[3] That case, which has been labeled Theriault II, was dismissed by the district court on the same day it was filed.
 
 
 10
 In the meantime, before filing the Texas suit, on March 27, 1972, Theriault had again filed suit in the Northern District of Georgia, this time alleging violations by Atlanta officials of the order in Theriault I. On January 22, 1973, in what has been labeled Theriault III, the Georgia court found the defendants in that case in civil contempt for violating its earlier decision. Theriault v. Carlson (Theriault III), 353 F.Supp. 1061 (N.D.Ga.1973).
 
 
 11
 The three Theriault decisions were appealed to the Fifth Circuit Court of Appeals. The appellate court reversed and set aside the Georgia court's contempt ruling in Theriault III, and remanded Theriault I and II for further evidentiary findings. Theriault v. Carlson, 495 F.2d 390 (5th Cir. 1974).
 
 
 12
 On remand, Theriault I and II were consolidated for hearing in the Western District of Texas. The Texas court found that the Church of the New Song was not a legitimate religion entitled to First Amendment protection, Theriault v. Silber (Theriault IV), 391 F.Supp. 578 (W.D.Tex.1975), but the Fifth Circuit again reversed and remanded for more complete findings. 547 F.2d 1279 (5th Cir. 1977).
 
 
 13
 On remand, in a decision rendered February 13, 1978, the Texas court incorporated by reference all of the findings made in Theriault IV, while making additional findings as required by the remand. Theriault v. Silber (Theriault V), 453 F.Supp. 254, 264 (W.D.Tex.1978). Of particular importance for this appeal is the statement by the court in Theriault IV that its decision was based on an examination of
 
 
 14
 all of the documents, testimony and records made of record in the instant case together with the evidence presented at the various hearings . . . .
 
 
 15
 Theriault IV, 391 F.Supp. at 581. The Theriault IV court specifically referred to Theriault's violent behavior at Marion as one of the facts developed in the prior hearings. Id. at 581. Based on the facts developed in all of the previous hearings involving the Church of the New Song including those facts concerning Theriault at Marion and an examination of the governing legal principles, the Theriault V court concluded that the Church of the New Song was not a legitimate religion entitled to First Amendment protection.[4] Theriault V, 453 F.Supp. at 265.
 
 
 16
 During the lengthy course of the litigation in the Fifth Circuit, the district court for the Eastern District of Illinois conducted an evidentiary hearing on the consolidated Marion suit. On April 4, 1975, the Illinois court dismissed the suit, holding that the Church of the New Song was not a religion. Almost four years later, on January 17, 1979, a panel of this court vacated the lower court's dismissal and remanded for further proceedings. The court stated:
 
 
 17
 The course and extent of further proceedings will depend upon the course of events in the actions in the Western District of Texas. We draw the district court's attention to the possibility that judgment in Texas may be res judicata or collateral estoppel.
 
 
 18
 Church of the New Song v. Establishment of Religion on Taxpayers' Money in the Federal Bureau of Prisons, No. 75-1684 (7th Cir. Jan. 17, 1979), 590 F.2d 337, memo. op. at 10-11. Pursuant to the remand, the district court concluded that the Texas judgment was determinative of all the issues before it under the doctrine of res judicata. Plaintiffs appealed.
 
 II
 
 19
 We find it unnecessary to recite the details of plaintiffs' purported religion; instead, we will consider the arguments against application of res judicata.
 
 
 20
 Plaintiffs first argue that the district court should not have relied on res judicata because defendants did not raise it as an affirmative defense in the pleadings or in a pretrial motion. However, defendants did affirmatively raise the res judicata effect of the Fifth Circuit's decision in Theriault v. Carlson, 495 F.2d 390 (5th Cir. 1974), in their October 25, 1974 Motion to Dismiss the consolidated Marion suit. See Record, Vol. III, Document No. 25, at p. 4. Moreover, this court specifically instructed the district court to consider the possible res judicata effect of the Texas judgment. See Church of the New Song, supra, memo. op. at 10-11. The district court was following the mandate of this court, and plaintiffs cannot now be heard to object.
 
 
 21
 Plaintiffs also argue that the dismissal of the Marion case was improper because all of the elements necessary for application of res judicata are not present. Before res judicata can be applied to bar an action, several elements must be found: there must have been a previous, final judgment on the merits by a court of competent jurisdiction, involving the same causes of action between the same parties or their privies. Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79, 94 S.Ct. 806, 811-12, 39 L.Ed.2d 9 (1974). We find all of these elements present here.
 
 
 22
 Plaintiffs apparently do not dispute that the Texas case was a final judgment on the merits. Rather, they argue that the Texas judgment was neither based on the same cause of action nor involved the same parties.
 
 
 23
 * There is no hard and fast rule to determine whether two cases involve the same cause of action. One important consideration is whether the same evidence would suffice to sustain both judgments because the wrong for which redress is sought is the same in both actions. Woodbury v. Porter, 158 F.2d 194, 195 (8th Cir. 1946). An examination of the Texas and the Illinois suits makes clear that they did involve the same causes of action.
 
 
 24
 First, in both suits, plaintiffs argued that prison officials denied them the right freely to exercise their religion. The threshold question in both cases, therefore, was whether the Church of the New Song was a legitimate religion entitled to First Amendment protection. The Texas court considered in great detail not only the writings and tenets of the Church of the New Song, but also the conduct of the followers of that religion and concluded that
 
 
 25
 (t)he Church of the New Song appears not to be a religion, but rather as a masquerade designed to obtain First Amendment protection for acts which otherwise would be unlawful and/or reasonably disallowed by the various prison authorities . . .
 
 
 26
 Theriault v. Silber (Theriault V), 453 F.Supp. 254, 260 (W.D.Tex.1978). The court specifically stated that the followers of the purported religion were found almost exclusively in the federal penitentiaries at Atlanta, LaTuna and Marion. Id. at 260 (emphasis supplied). Moreover, the Texas court expressly relied on the fact that Theriault had threatened mass violence at Marion and had actually physically assaulted Marion officials and had destroyed prison property there. Id.
 
 
 27
 We believe that the Texas court's determination that the Church of the New Song was a sham religion is res judicata as to the separate Marion suit. We are not persuaded by plaintiffs' argument that "the evidence required to sustain the Marion suit would have been insufficient to sustain the Texas judgment . . . ." Brief of Plaintiffs at 13. On the contrary, the same evidence would suffice and indeed was relied upon to sustain both judgments because the wrongs for which redress was sought were the same. See Woodbury, supra, 158 F.2d at 195.
 
 
 28
 Plaintiffs make much of the fact that the Church of the New Song, as practiced in the Iowa State Penitentiary, has been held to be a religion entitled to First Amendment protection. See Remmers v. Brewer, 361 F.Supp. 537 (S.D.Iowa 1973), aff'd per curiam, 494 F.2d 1277 (8th Cir.), cert. denied, 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974); Loney v. Scurr, 474 F.Supp. 1186 (S.D.Iowa 1979). Those cases, however, relied on facts substantially different from those before the Texas court in Theriault V. Indeed, the Remmers court found and the Loney court expressly acknowledged that there was no evidence that the Church counseled violence nor was there evidence linking Church activities to disturbances at the Iowa prison. Remmers, supra, 361 F.Supp. at 542; Loney, supra, 474 F.Supp. at 1189. Such findings are clearly contrary to the facts of the Theriault cases, and the Iowa court was aware of the differences:
 
 
 29
 (T)he facts in those cases involving Theriault were simply not the facts in this case.
 
 
 30
 Loney, supra, 474 F.Supp. at 1190.
 
 
 31
 As pointed out above, the court in Theriault V relied in part on the violent behavior of Theriault and his followers at Marion in concluding that the Church was a sham. Whether the followers of the faith in the Iowa prison are sincere and nonviolent can have no bearing on whether the religion as practiced at Marion, Atlanta and LaTuna is a sham.
 
 
 32
 Plaintiffs also argue that res judicata was improperly applied to its Establishment Clause claims. We disagree.
 
 
 33
 In both the Texas and Illinois suits, plaintiffs argued that the financing of chaplain services in federal penitentiaries was violative of the Establishment Clause of the First Amendment. Both cases involved chaplains hired by the Federal Bureau of Prisons who were following the guidelines established by the Bureau of Prisons. The same alleged right freedom from governmental imposition of a religion and the same alleged wrong violation of that freedom were involved in both cases. The same evidence would suffice to sustain both judgments and we accordingly hold that res judicata was properly applied.
 
 
 34
 Plaintiffs also argue that res judicata cannot act as a bar to their claim that the Marion defendants placed Theriault in punitive segregation as a result of his religious beliefs. According to plaintiffs, the "Texas court did not have before it any evidence of either the Marion defendants's (sic) motivations or the circumstances giving rise to their disciplinary actions." Brief of Plaintiffs at 14. An examination of the Texas decision refutes that argument.
 
 
 35
 As discussed above, the Texas court in Theriault V expressly relied on all the facts as found by the previous Theriault courts. In particular, the court relied on facts relating to Theriault's segregative confinement at Marion:
 
 
 36
 (S)everal correctional officers and other prison officials from Marion, Illinois Penitentiary testified about various threats by Theriault of mass violence, veiled threats of murder, actual physical assault and battery of prison officers and destruction by Theriault of prison property. Theriault v. Carlson, supra, 495 F.2d at page 392. One such incident occurred on April 1, 1971 following a request by Theriault to use the Chapel or Auditorium for the purpose of holding an organizational meeting:
 
 
 37
 "Theriault, an escape artist by his own admission, having several times broken away from Federal custody, was considered by prison officials to be a high escape risk. Moreover, he and his followers were known trouble makers. Theriault was told of the prison policy requiring permission from the Chaplain to secure a meeting place, and it was the Chaplain's duty to coordinate religious activities. Theriault declined to follow instructions and announced his intention to hold a meeting, warning prison authorities that if they used violence to break it up there would be bloodshed. Because of his threats, Theriault was placed in solitary confinement, to which he reacted by kicking the correctional supervisor. He later broke the bed from the cell wall, destroyed the toilet with a piece of angle iron, shoved the bed against the cell door and warned that he would kill anyone who attempted to enter." (Emphasis supplied) Theriault v. Carlson, supra, 495 F.2d at page 393.
 
 
 38
 Theriault V, 453 F.Supp. at 256.
 
 
 39
 This factual finding addressed specifically Theriault's solitary confinement at Marion; it proved "the motivations of the respondents in imposing such disciplinary measures on the plaintiff and the necessity for such measures under the circumstances." See Brief of Plaintiffs at 14. Moreover, even the court in Theriault I considered the reason for his segregation at Marion. See 339 F.Supp. at 378-80. Since the Texas decision used evidence of Theriault's behavior at Marion in determining that the Church of the New Song was not a legitimate religion, its findings are res judicata with respect to plaintiffs' claim.
 
 B
 
 40
 Plaintiffs argue further that res judicata should not have been applied because the parties in the Texas and Illinois suits were different. According to plaintiffs:
 
 
 41
 (I)t appears that the defendants in the Marion suit, chaplains employed at Marion, were not also defendants in the Texas suit . . . . (and that there was no) degree of privity in the relationship between the Marion and Texas defendants.
 
 
 42
 Brief of Plaintiffs at 19.
 
 
 43
 Defendants correctly point out, however, that since both suits were brought against employees of the Federal Bureau of Prisons, the defendants in both cases are in privity. As the United States Supreme Court said in Sunshine Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940):
 
 
 44
 There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.
 
 
 45
 Id. at 402-03, 60 S.Ct. at 917.
 
 III
 
 46
 Plaintiffs finally argue that even if all the requirements for res judicata are met, application of the doctrine is inappropriate here because of the important public policies and liberty interests at stake. We believe, however, that Theriault has more than had his day in court.[5] Res judicata itself is based on public policy favoring an end to litigation, and we hold that it was appropriately applied in this case.
 
 
 47
 We have considered all other arguments advanced by plaintiffs and find them all without merit. Accordingly, we affirm.
 
 
 
 [1]
 In particular, Theriault sought to compel prison officials to grant him the right to hold religious services in prison for those who shared his religious beliefs. He alleged that by hiring chaplains of other faiths to work on the prison staff, the Bureau of Prisons had violated the Establishment Clause of the First Amendment; by denying his requests to hold religious services, the Prison Bureau had violated the Free Exercise Clause of the First Amendment
 
 
 [2]
 In addition to making the same First Amendment arguments as in the Atlanta suit, Theriault alleged that he had been placed in segregative confinement in violation of his constitutional rights
 
 
 [3]
 He alleged that his segregative confinement was punitive and unconstitutional, that the LaTuna authorities were illegally reporting on his religious activities, and that the officials were generally denying him religious privileges
 
 
 [4]
 Plaintiff appealed from the decision in Theriault V. However, because of vile and insulting references to the trial court, the Fifth Circuit Court of Appeals struck plaintiff's notice of appeal, giving him ten days to file a proper notice. 574 F.2d 197 (5th Cir. 1978). Plaintiff's second notice of appeal was equally abusive and the Fifth Circuit dismissed the appeal with prejudice. 579 F.2d 302 (5th Cir. 1978)
 
 
 [5]
 In addition to the cases discussed in this opinion, Theriault has been involved in numerous lawsuits as either a plaintiff complaining of prison conditions or as a defendant being prosecuted for unruly prison conduct. See Theriault v. United States Court of Appeals for the Seventh Circuit, 434 U.S. 953, 98 S.Ct. 493, 54 L.Ed.2d 321 (1977); Theriault v. Carlson, 339 F.Supp. 375 (N.D.Ga.1972), vacated and remanded, 495 F.2d 390 (5th Cir. 1974), rehearing denied, 498 F.2d 1402, cert. denied sub nom. Theriault v. Silber, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974), on remand, 391 F.Supp. 578 (W.D.Tex.1975), vacated and remanded, 547 F.2d 1279 (5th Cir. 1977), rehearing denied, 551 F.2d 863, cert. denied, 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977), rehearing denied, 434 U.S. 943, 98 S.Ct. 441, 54 L.Ed.2d 306 (1977), appeal dismissed, 574 F.2d 197 (5th Cir. 1978); United States v. Theriault, dist. ct. aff'd in part, vacated and remanded in part, 526 F.2d 698 (5th Cir. 1976), after remand dist. ct. aff'd in part and remanded in part, 531 F.2d 281, rehearing denied, 534 F.2d 1407, cert. denied, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976), dist. ct. aff'd, 555 F.2d 460 (1977), cert. denied, 434 U.S. 870, 98 S.Ct. 212, 54 L.Ed.2d 148 (1977); Theriault v. Pittman, 423 U.S. 818, 96 S.Ct. 155, 46 L.Ed.2d 114 (1975); Theriault v. Pittman, 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975); Theriault v. Pittman, 420 U.S. 989, 95 S.Ct. 1437, 43 L.Ed.2d 680 (1975); Theriault v. Carlson, 353 F.Supp. 1061 (N.D.Ga.1973), reversed, 495 F.2d 390 (5th Cir. 1974), cert. denied sub nom. Theriault v. Silber, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974); Theriault v. United States Court of Appeals for the Seventh Circuit, 416 U.S. 980, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974); Theriault v. Bartels, 415 U.S. 979, 94 S.Ct. 1567, 39 L.Ed.2d 875 (1974); Theriault v. United States, 481 F.2d 1193 (5th Cir. 1973), cert. denied, 414 U.S. 1114, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973); United States v. Theriault, dist. ct. reversed and remanded, 440 F.2d 713 (5th Cir. 1971), dist. ct. aff'd, 474 F.2d 359 (5th Cir. 1973), cert. denied, 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); Theriault v. United States, sentence vacated and case remanded, 434 F.2d 212 (5th Cir. 1970), cert. denied, 404 U.S. 869, 92 S.Ct. 124, 30 L.Ed.2d 113 (1971), aff'd, 467 F.2d 486 (1972), cert. denied, 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961 (1973); Theriault v. Establishment of Religion on Taxpayers' Money in the Federal Bureau of Prisons, 411 U.S. 946, 93 S.Ct. 1937, 36 L.Ed.2d 418 (1973); Theriault v. Silber, 405 U.S. 1048, 92 S.Ct. 1328, 31 L.Ed.2d 590 (1972); United States v. Theriault, 447 F.2d 1361 (5th Cir. 1971), cert. denied, 404 U.S. 1064, 92 S.Ct. 750, 30 L.Ed.2d 752 (1972); Theriault v. United States Court of Appeals for the Seventh Circuit, 404 U.S. 936, 92 S.Ct. 304, 30 L.Ed.2d 269 (1971); Theriault v. Pittman, 404 U.S. 952, 92 S.Ct. 305, 30 L.Ed.2d 269 (1971); Theriault v. Mississippi, 404 U.S. 818, 92 S.Ct. 156, 30 L.Ed.2d 119 (1971); Theriault v. Harris, 404 U.S. 870, 92 S.Ct. 125, 30 L.Ed.2d 113 (1971), 403 U.S. 923, 91 S.Ct. 2238, 29 L.Ed.2d 702 rehearing denied, 404 U.S. 877, 92 S.Ct. 34, 30 L.Ed.2d 125 (1971); Theriault v. Blackwell, 437 F.2d 76 (5th Cir. 1971), cert. denied, 402 U.S. 953, 91 S.Ct. 1637, 29 L.Ed.2d 122 (1971); Theriault v. Daggett, 401 U.S. 983, 91 S.Ct. 1205, 28 L.Ed.2d 335 (1971); Theriault v. United States, 401 U.S. 983, 91 S.Ct. 1205, 28 L.Ed.2d 335 (1971); Theriault v. United States, 409 F.2d 1313 (5th Cir. 1969), cert. denied, 396 U.S. 933, 90 S.Ct. 274, 24 L.Ed.2d 231 (1969); Theriault v. United States, 402 F.2d 792 (5thCir.1968), cert. denied, 395 U.S. 965, 89 S.Ct. 2110, 23 L.Ed.2d 751 (1969), rehearing denied, 396 U.S. 870, 90 S.Ct. 42, 24 L.Ed.2d 128 (1969); Theriault v. Peek, 406 F.2d 117 (5th Cir. 1968), cert. denied, 394 U.S. 1021, 89 S.Ct. 1644, 23 L.Ed.2d 47 (1969); United States v. Theriault, 268 F.Supp. 314 (W.D.Ark.1967), aff'd, 401 F.2d 79 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969), rehearing denied, 394 U.S. 939, 89 S.Ct. 1201, 22 L.Ed.2d 474 (1969); Theriault v. Mississippi, 433 F.2d 990 (5th Cir. 1970); Theriault v. Mississippi, 390 F.2d 657 (5th Cir. 1968)