**IDEAL LIFE CHURCH OF LAKE ELMO, Petitioner, Relator-Respondent,**

v.

**COUNTY OF WASHINGTON, Respondent-Relator.**

**Nos. 50997, 51013.**

Supreme Court of Minnesota.

March 13, 1981.

Sinclair & Pardee, Edward L. Pardee and Gordon I. Sinclair, St. Paul, for Ideal Life Church of Lake Elmo.

Warren Spannaus, Atty. Gen. and Paul R. Kempainen, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for County of Washington.

SCOTT, Justice.

This is an appeal by the Ideal Life Church of Lake Elmo (Ideal Life Church) from a

decision of the Tax Court holding that the involved real estate was not exempt from property tax. The County of Washington cross-appealed on the ground that the Tax Court erred in ruling that the real estate in question is entitled to a homestead classification. We affirm the Tax Court on its refusal to declare an exemption, but reverse on the latter ruling of homestead classification.

On December 27, 1977, the Ideal Life Church, through the actions of LeRoy Rossow, made application to the Lake Elmo Assessor for the exemption from real property taxes of LeRoy Rossow's home in Washington County, Minnesota. The Ideal Life Church alleged that LeRoy Rossow's home was a church or church property within the property tax exemption provided by Minn.Const. art. X, § 1, and Minn.Stat. § 272.02(1)(5) (1980). This application was denied by the assessor, the local and county boards of review, and the State Board of Equalization. On January 11, 1979, the Ideal Life Church filed a petition for review with the Tax Court. The Tax Court found that the proper classification of the subject property was that of a homestead not exempt from taxation.

The real estate that is the subject of this appeal is located in the City of Lake Elmo, Washington County, Minnesota. The record owner of the subject property since December 28, 1977, is the Ideal Life Church, Inc., of Lake Elmo. Prior to the Ideal Life Church's becoming the record owner of the

property, the home was jointly owned and homesteaded by LeRoy Rossow, Jr., and his wife, Genevieve, who together had built the home in 1971 or 1972.[1]

The Ideal Life Church was incorporated on December 23, 1977.[2] It had an original membership of eleven persons, all of whom were members of the Rossow family.[3] At the time of trial its membership had increased to seventeen or eighteen persons.[4]

LeRoy Rossow testified that prior to the incorporation of the Ideal Life Church his "family" functioned as a religious organization named "Rossow's Revival." This organization operated under a charter granted by the Universal Life Church of Modesto, California. LeRoy Rossow testified that he paid $50 to the Universal Life Church for information concerning tax exemptions and the formation of churches. He also paid $20 to the Universal Life Church to obtain a minister's ordination certificate. Although LeRoy Rossow indicated that "Rossow's Revival" was the forerunner of the present corporation, he testified that his Ideal Life Church at present has no connection with the Universal Life Church of Modesto, California.

The day after the Ideal Life Church was incorporated, December 24, 1977, LeRoy Rossow and his wife signed a contract for deed conveying their home to the church. On December 28, 1977, LeRoy Rossow and his wife also signed a quitclaim deed which purported to convey the home to the Ideal

1. At the time of the hearing, the value of the property was $55,000. The property is a one-and-one-half story home with a full basement, three bedrooms, two bathrooms, a recreation room with a bar and fireplace, a dining room, living room and kitchen.

2. The articles of incorporation were signed by LeRoy and Genevieve Rossow and Daniel Rossow (LeRoy's brother). The same three persons form the entire membership of the Ideal Life Church's board of trustees. All three individuals also have been appointed "ministers" by the board of trustees. LeRoy Rossow also is known as the "chairman" of the Ideal Life Church and the "president" of the church. Notwithstanding these titles, LeRoy Rossow has never taken any formal studies in theology

or religion. By trade, LeRoy Rossow is a self-employed electrician working out of an office he maintains in the property that is the subject of this appeal. He also is a land developer in the city of Lake Elmo.

3. LeRoy Rossow testified that the original eleven members included himself and his wife, their two children, LeRoy Rossow's brother, Daniel, his wife and three children, and LeRoy Rossow's father and mother.

4. The additional members since incorporation are a neighbor, Gary Carlson, his wife and two minor children, one Steven Monelte, one Larry Westbrock, and apparently one other unidentified person.

Life Church.[5] The day before the quitclaim deed was signed, December 27, 1977, LeRoy Rossow, as chairman of the Ideal Life Church, filed a "Statement of Owner of Real Estate Claimed to Be Exempt from Taxation" with the Lake Elmo Assessor. On cross-examination LeRoy Rossow admitted that these events were the result of a "preconceived plan." [6]

The bylaws of the Ideal Life Church also were introduced into evidence. The bylaws require voting members to be at least eighteen years old. There are presently six adult members of the Rossow family who qualify to vote at congregational meetings and only four non-family adult members. The Rossow family controls all aspects of the Ideal Life Church, including control of the church's real property. The admission of new members requires the approval of the church's board of trustees. The board of trustees may only be overruled by a three-fourths majority of voting members.

Many of the beliefs of the Ideal Life Church were made known at trial. The statements of LeRoy Rossow made earlier at the State Board of Equalization hearing on September 28, 1979, were read into the record, and acknowledged by LeRoy Rossow as true. He also testified that the beliefs set forth at that hearing have not changed, and remain essentially the same. Specifically, LeRoy Rossow stated that the doctrine of the Ideal Life Church "was established on a casual basis" and that:

> [W]e have no real formal doctrine that anybody has to follow or guidelines for everybody to follow. It's on an individual basis.
>
> We believe in two basic things. That one, we have a responsibility toward the brotherhood of man. And second that

you have a right to believe in religion or religious items as you choose. We don't say you have to believe in Christ or you have to believe in certain other things * * *.

> What this is is a place to gather and to have a community relationship. I don't know, it's just kind of a fellowship type thing, to get things off your chest, to have somebody you can turn to in time of need * * *.

The second source of evidence regarding the beliefs of the Ideal Life Church may be found in the church bylaws. Article III of the bylaws reads as follows:

### Doctrine

A. All Christians have a responsibility toward their fellow men, a responsibility dictated not only by the word of Jesus Christ, but by moral law throughout history.

B. All Christians have a right to the Ideal Life, whatever he or she might believe it to be, as long as it hurts or offends no one else.

C. The word of God is free.

On cross-examination LeRoy Rossow admitted that the bylaws and the "Doctrine" contained therein were adopted only after his unsuccessful hearing to obtain a real property tax exemption before the State Board of Equalization.[7]

Other evidence adduced at trial revealed that the Ideal Life Church does not require a belief in any supreme being. The Ideal Life Church also does not have any sacraments, rituals or literature of its own. Moreover, despite language in the Ideal Life Church's articles of incorporation stating that one of its purposes is education, the church has not set up any courses of instruction.

---

5. Notwithstanding these transactions, LeRoy Rossow and his family continuously resided in the property in question. The great majority of the Ideal Life Church's expenses are for the mortgage payments and maintenance costs of the home in question.

6. All of the documents involved in the sale of the Rossow home to the Ideal Life Church were completed by LeRoy Rossow without the benefit of legal counsel.

7. LeRoy Rossow testified:

> [T]hey had asked the question do you have a code of ethics or do you have a set of by-laws and I said I wasn't aware that we needed those specific items to be a church, but it's a good idea. And we went ahead and adopted a set of by-laws and a code of ethics and a formal written doctrine after that time.

The trial court record also indicates that members of the Ideal Life Church are free to actively practice and belong to other religious faiths. LeRoy Rossow's own wife, Genevieve—a trustee, minister, and member of the Ideal Life Church—remains a member of the Roman Catholic Church. She currently attends the Guardian Angels Parish Church in Lake Elmo. LeRoy Rossow also acknowledged that he and his wife contributed a "couple hundred dollars a year" to Guardian Angels Church. His two children also were enrolled in the Catholic religious education program at Guardian Angels Church in 1978 and 1979.

LeRoy Rossow testified that the Ideal Life Church generally holds meetings on the first Sunday of every month. After the members greet each other they have a dinner, at which time a specific topic is discussed, and after which there is a "a closing, a commitment to [the church's] ideals." At church meetings, "world problems" are discussed and members come in with their own problems to "get things off their chests." Although nonmembers are not usually present at these meetings, visitors sometimes attend.[8]

At the time this matter was tried before the Tax Court, the Ideal Life Church had applied for a tax exemption under the federal Internal Revenue Code as a religious institution. It had not, however, received a ruling on its application before the Tax Court rendered its decision. On December 27, 1979, the federal Internal Revenue Service informed the Minnesota Attorney General's Office that the Ideal Life Church had been determined on the merits not to be an exempt organization under Internal Revenue Code § 501(c)(3).

The following issues are before us for resolution:

(1) Whether the Ideal Life Church is an entity falling within the property tax exemption provided by Minn.Const. art. X,

§ 1, and Minn.Stat. § 272.02(1)(5) (1980), for "churches, church property and houses of worship."

(2) Whether the Tax Court erred in ruling that the property in question qualified for homestead classification.

1. The Tax Court held that the proper classification of the property was that of a homestead, not that of a "church or house of worship" under Minnesota law, and that the subject property was not exempt from property taxation. The Tax Court found that LeRoy Rossow and his family were the controlling force behind the church entity. The court further found that the primary purpose behind the Rossow family's preconceived plan for incorporation and its subsequent application for tax exemption was to provide LeRoy Rossow with all the benefits of a tax-free home, while at the same time maintaining substantially the same use and control of the property as if he and his wife were the fee owners.

The issue presented by this factual situation is one of first impression before this court. Appellant Ideal Life Church seeks to bring itself within the ambit of the Minnesota constitutional and legislative property taxation exemptions. Article X, § 1, of the revised Minnesota Constitution reads in relevant part as follows:

[A]ll churches, church property, houses of worship, * * * shall be exempt from taxation except as provided in this section.

A similar exemption is contained in Minn. Stat. § 272.02(1)(5) (1980), which states:

Except as provided in other subdivisions of this section or in section 272.025, all property described in this section to the extent herein limited shall be exempt from taxation.

. . . .

(5) All churches, church property, and houses of worship.

 Certain well-settled rules have been established relating to statutes and

**8.** LeRoy Rossow testified that at an average church meeting attendance will vary from two to six persons. He also testified that in 1979 fifty to sixty persons attended Easter service, and in 1980 eighty-five to ninety-five persons attended the church's Easter service. LeRoy Rossow described these gatherings as an "Easter brunch and meeting" involving a substantial number of Rossow family members.

constitutional provisions providing for exemption from taxes. As stated in *Camping & Educational Foundation v. State*, 282 Minn. 245, 164 N.W.2d 369 (1969):

> One of the rules that is well established is that taxation is the rule and exemption is an exception in derogation of equal rights. Therefore, there is a presumption that all property is taxable. In consequence, the burden of proof is on the one seeking the exemption to establish that he is entitled to the exemption. *See, In re Petition of Junior Achievement of Greater Minneapolis, Inc. v. State*, 271 Minn. 385, 135 N.W.2d 881; *Christian Business Men's Committee v. State*, 228 Minn. 549, 38 N.W.2d 803; *American Ry. Exp. Co. v. Holm*, 169 Minn. 323, 211 N.W. 467.
>
> Another long-established rule is that exemption provisions are to be strictly construed. *See, Ramaley v. City of St. Paul*, 226 Minn. 406, 33 N.W.2d 19. *See, also, St. Peter's Church of Shakopee v. Board of County Commissioners for County of Scott*, 12 Minn. 280 (395); *County of Hennepin v. Bell*, 43 Minn. 344, 45 N.W. 615; *County of Ramsey v. Church of the Good Shepherd*, 45 Minn. 229, 47 N.W. 783, 11 A.L.R. 175.

*Id.* at 250, 164 N.W.2d at 372 (footnote omitted). The Ideal Life Church asserts in its brief that the rule of strict construction "does not apply in full force to churches," citing *State v. Church of Incarnation*, 158 Minn. 48, 196 N.W. 802 (1924). Appellant's reliance on that case is misplaced; it does not support an exception to the general rule of strict construction for churches. The *Church of Incarnation* court simply held that the 1906 Minnesota constitutional amendment allowed parsonages to be included within the church property tax exemption. Moreover, in a footnote, the *Camping and Education Foundation* court stated:

> In so far as Minnesota decisions are concerned, the *only* apparent exception to the rule of strict construction of the tax exemption provisions is the provision relating to schools of various types. In such cases the rule apparently does not

apply because of a public policy of encouraging private educational institutions, which policy can be traced back to Article III of the Northwest Ordinance. *See, State v. Bishop Seabury Mission*, 90 Minn. 92, 95 N.W. 882; *State v. Carleton College*, 154 Minn. 280, 191 N.W. 400. Even with respect to that exception to the rule of strict construction, the exemption provisions have been relatively strictly construed * * *.

282 Minn. at 150–51 n.1, 164 N.W.2d at 372 n.1 (emphasis added).

■ Another settled principle may be found in *Christian Businessmen's Committee of Minneapolis, Inc. v. State*, 228 Minn. 549, 38 N.W.2d 803 (1949). In that case the court stated:

> In order for any institution to qualify for tax exemption under Minn.Const. art. 9, § 1—and M.S.A. § 272.02 enacted pursuant thereto—there must be a concurrence of *ownership* of the property by an institution of the type prescribed by the constitution and a *use* of the property for the purpose for which such institution was organized.

*Id.* at 554, 38 N.W.2d at 808 (footnote omitted; emphasis in original). The *Christian Businessmen's Committee of Minneapolis, Inc.*, case requires a two-pronged analysis. First, it must be determined whether the property is owned by a "church." Second, and concurrently, it must be ascertained whether there is an appropriate "use" of the property.

There is no Minnesota case law or legislation defining the word "church." The only Minnesota case which even remotely indicates what sort of factors make up a "church" for tax exemption purposes is *State v. Board of Foreign Missions of Augustana Synod*, 221 Minn. 536, 22 N.W.2d 642 (1946). That case involved the question of whether a church-owned residence occupied by the executive director of that church's missionary organization was exempt from real property taxation. In reversing a judgment denying the exemption, this court spoke of an exempt church "as a

living institution for the advancement of religion as a way of life for all men." *Id.* at 542, 22 N.W.2d at 645.

Only a few courts in other jurisdictions have attempted to define the term "church" or other related terms. For example, in the recent property tax exemption decision, *Missouri Church of Scientology v. State Tax Commissioner,* 560 S.W.2d 837 (Mo.1977), *appeal dismissed,* 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978), the Missouri Supreme Court was required to determine the meaning of the terms "religion" and "religious worship." [9] In affirming the denial of the exemption, the court defined these terms in a traditional theistic manner:

> The term religious worship in the commonly accepted sense includes as a necessary minimum a belief in the Supreme Being of the universe. Generally religious worship is expressed by prayers, reverence, homage and adoration paid to a deity and include[s] the seeking out by prayer and otherwise the will of the deity for divine guidance. Webster's New World Dictionary of the American Language, Second College Edition, copyrighted in 1974, defines religion as "belief in a divine or superhuman power or powers to be obeyed and worshiped as the creator[s] and ruler[s] of the universe; b) expression of such a belief in conduct and ritual." "Worship" is defined as "reverence or devotion for a deity; religious homage or veneration; b) a church service or other right showing this." In Webster's Third New International Dictionary, copyrighted 1976, religion is defined as "the personal commitment to and serving God or a God with worshipful devotion, conduct in accord with divine commands esp. as found in accepted sacred writings or declared by authoritative teachers, a way of life recognized as incumbent upon true believers, and typically the relating of oneself to an organized body of believers." Another definition suggested is "a

personal awareness or conviction of the existence of a supreme being or supernatural powers or influences controlling one's own, humanity's, or all nature's destiny." In this authority *worship* is defined as "the reverence or veneration tendered a divine being or supernatural power; also: an act, process, or instance of expressing such veneration by performing or taking part in religious exercises or ritual." Other dictionaries consulted provide similar definitions.

*Id.* at 840 (emphasis in original). The Missouri Supreme Court also reviewed the manner in which the United States Supreme Court dealt with the term religion:

> In 1890 the United States Supreme Court stated "The term 'religion' has references to one's view of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." *Davis v. Beason,* 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637 (1890). * * * Mr. Justice Hughes in his dissent in *United States v. Macintosh,* 283 U.S. 605, 633, 51 S.Ct. 570, 578, 75 L.Ed. 1302 (1931) (the dissent involved another issue) stated: "The essence of religion is belief in a relation to God involving duties superior to those arising from any human relation." Joining in this dissent were Holmes, Stone and Brandeis. Hughes' isolation and identification of the indispensable ingredient of religion remains a basic guide in this area of the law.

*Id.* at 840–41. Other courts also have defined religion and related phrases in a theistic manner. *See Berman v. United States,* 156 F.2d 377, 380 (9th Cir. 1946); *Board of Trustees of the Kansas East Conference of the United Methodist Church v. Cogswell,* 205 Kan. 847, 473 P.2d 1 (1970); *McMasters v. State,* 21 Okl.Cr. 318, 207 P. 566 (1922).

---

**9.** The Missouri Church of Scientology sought exemption from ad valorem taxation under Mo. Const. art. X, § 6, which provides that "all property * * * used exclusively for religious worship * * * may be exempted from taxation * * *," and Mo.Ann.Stat. § 137.100(5) (1969), which exempted from state, county and local taxation "all property, real and personal, actually and regularly used exclusively for religious worship."

In contrast to the afore-mentioned theistic definitions, the Ideal Life Church in its brief cites only Webster's Seventh New Collegiate Dictionary for a definition of the term "church". Appellant's brief indicates that:

The *Webster's Seventh New Collegiate Dictionary* defines "church" as

1. Building for public, especially Christian worship;
2. the clergy or officialdom of a religious body; and
3. a body or organization of religious believers.

In ascertaining the legal meaning of the word "church," as used in Minnesota's exemption provisions, the Tax Court neither adopted a single, all-purpose theistic definition nor the liberal definition that the Ideal Life Church advocates. Instead, it based its decision upon a multiple factual analysis test. Specifically, the Tax Court indicated:

In summary, the proper test for determination of a "church" depends upon an analysis of all the facts and circumstances of each particular case. In the present action the following factors, each of which are amply supported by the evidence, lead to the clear conclusion that Petitioner is not a "church" for Minnesota tax exemption purposes:

1. In substance, the preconceived and primary, if not the sole, motive behind Petitioner's organization and operation was tax avoidance in favor of the private individuals who control the corporation, to wit: LeRoy Rossow and his family.
2. Petitioner's doctrine and beliefs, such as they are, are intentionally vague and non-binding upon its members.
3. Petitioner's members freely continue to practice other religions.
4. Petitioner has no formally trained or ordained ministry.
5. Petitioner has no sacraments, rituals, education courses or literature of its own.
6. Petitioner has no liturgy, other than simple meetings which resemble mere social gatherings or discussion groups rather than religious worship.

7. Petitioner is not an institution which advances religion (as that term is commonly understood) as a way of life for all men.
8. Petitioner does not require a belief in any Supreme Being or beings.

Whatever else it may be, the evidence is clear that Petitioner is simply not a "church" as that term is used in Minn. Const. Art. X, Sec. 1 and Minn.Stat. Sec. 272.02, subd. 1(5).

■ The Tax Court's factual analysis test is similar to the one adopted by this court in charitable tax exemption cases. *See, e. g., Mayo Foundation v. Commissioner of Revenue*, 306 Minn. 25, 33, 36, 236 N.W.2d 767, 771, 773 (1975). Most recently, this court indicated that such a test means that "[e]ach case must be decided upon [an] analysis of its own unique facts." *Worthington Dormitory, Inc. v. Commissioner of Revenue*, 292 N.W.2d 276 (Minn.1980). The county, in its brief, urges that the Tax Court's "factual analysis" test should be adopted—

by this Court as the correct test in cases of church tax exemption as well as in charitable tax exemption [cases]. Such a test is desirable because it is based upon *all* the relevant factors in each particular case, and will therefore avoid the dangers of making anyone factor or set of factors completely determinative, resulting in either a too-narrow or overly-broad definition.

(Emphasis in original.) We find respondent's reasoning persuasive. The Tax Court's multifactual analysis test is a workable formula for determining whether a "church" qualifies as a tax exempt entity.

The Ideal Life Church's brief contains three main arguments as to why the Tax Court's decision refusing to find it a "church" must be reversed. First, it alleges that the Tax Court based its decision primarily upon the fact that the Ideal Life Church does not require a belief in any Supreme Being. According to appellant, reliance on this factor violates the first amendment. This argument is not per-

suasive because the Tax Court cited eight separate factors in support of its holding that appellant was not a "church" within the meaning of Minnesota's tax exemption laws—only one of which was lack of belief in a Supreme Being. Moreover, the Tax Court recognized that there was a split of authority on whether lack of belief in a Supreme Being precludes an entity from being a "church." It did not, however, expressly adopt one set of authorities over the other; instead, it stated:

> [I]t is not necessary for this Court to adopt such a rule for purposes of this case. It is enough to say that the lack of a required belief in any Supreme Being is a legitimate factor to be considered. *When this factor is combined with all the other facts of this case*, it becomes evident that LeRoy Rossow's Ideal Life Church is simply not the sort of institution which the people of this state intended to exempt when they created the "church property" exemption.

(Emphasis added.)

Second, the Ideal Life Church argues that reversal is necessary because the Tax Court improperly preferred theistic over nontheistic "churches." This argument also is not persuasive because the "factual analysis" test used by the Tax Court does not in any way preclude a legitimate nontheistic religious organization from qualifying as a "church" within the meaning of Minnesota's tax exemption laws.

Finally, appellant argues that *Fellowship of Humanity v. County of Alameda*, 153 Cal.App.2d 673, 315 P.2d 394 (1959); *Founding Church of Scientology v. United States*, 409 F.2d 1146 (D.C.Cir.1969); *Remmers v. Brewer*, 361 F.Supp. 537 (S.D.Iowa 1973); and *Malnak v. Yogi*, 592 F.2d 197 (3rd Cir. 1979), required the Tax Court to find that the Ideal Life Church was a "church" with-

in the meaning of Minnesota's tax exemption laws. Each of these decisions, however, is either distinguishable or simply not applicable.

In *Fellowship of Humanity*, an intermediate state appellate court held that a belief in a Supreme Being was not required under California's tax exemption for property used in "religious worship." The state conceded, however, "that in all respects the Fellowship's activities were similar to those of theistic groups, except for their belief or lack of belief in a Supreme Being." 153 Cal.App. at 688, 315 P.2d at 410. As previously mentioned, the Tax Court in the instant case held that the Ideal Life Church's lack of belief in any Supreme Being or beings was only *one* factor to be considered in determining the question of tax exemption. As such, it could and did conclude that, upon consideration of all factors, appellant was not a "church."

Appellant's reliance on *Founding Church of Scientology* also is misplaced. In that non-tax case, the court held that plaintiff's "auditing procedures" did not constitute "labeling" within the Federal Food, Drug, and Cosmetic Act. In so holding the court, in dictum, indicated that plaintiff had proved that Scientology was a "prima facie" religion. Such dictum was understandable in that the government never contested plaintiff's claim that Scientology was a religion. *See* 409 F.2d at 1160.[10]

*Remmers v. Brewer* also is distinguishable as a non-tax case. *Remmers* involved the issue of whether inmates at a state prison could be prevented from using prison religious facilities in freely exercising their religion—the Church of the New Song. In the instant case, neither the state nor the county is preventing the actual exercise of the alleged beliefs of the Ideal Life Church.[11]

---

10. It should also be noted that in a tax case decided the same year, the United States Court of Claims held that scientology was not a tax exempt entity under the Internal Revenue Code. *See Founding Church of Scientology v. United States*, 188 Ct.Cl. 490, 412 F.2d 1197 (1969), *cert. denied*, 397 U.S. 1009, 90 S.Ct. 1237, 25 L.Ed.2d 422 (1970).

11. *Remmers* also must be read in conjunction with *Theriault v. Silber*, 453 F.Supp. 254 (W.D. Texas 1978), *appeal dismissed*, 579 F.2d 302, *cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 468 (1979). In *Theriault*, the federal district court held that the prison founder of the Church of the New Song was not entitled to

*Malnak v. Yogi* also is readily distinguishable as a non-tax case. The Third Circuit's finding that transcendental meditation was a religion did not involve any tax exemption issues. Instead, *Malnak* involved the issue of whether the teaching of transcendental meditation in a public school violated the First Amendment establishment clause.

█ The primary issue in this case is whether appellant is in fact a "church" as that term is used in Minnesota's tax exemption laws. We agree with the Tax Court that the property in question is not owned by a "church." We therefore do not reach the question of whether the property is being used for the purposes for which the tax exemption was created.

█ 2. As part of its conclusions of law the Tax Court ruled that the property in question, though not exempt, was entitled to classification as a homestead. The county alleges in its cross-appeal that the Tax Court erred in determining that the property was entitled to homestead classification because the property's classification was neither pleaded nor litigated below. Because the Tax Court may only review issues that are in dispute and have been litigated, we reverse on this issue. The record also indicates that during oral argument the appellant conceded that it was not claiming homestead exemption.

Affirmed as to the Tax Court's refusal to declare the property exempt from taxation; reversed as to its ruling of homestead classification.

SHERAN, C. J., took no part in the consideration or decision of this case.

"special treatment" under the guise of his new religion because:

The Church of the New Song appears not to be a religion, but rather as a masquerade designed to obtain First Amendment protection for acts which otherwise would be unlawful and/or reasonably disallowed by the various prison authorities but for the .attempts which have been and are being made to classify them as "religious" and, therefore, presumably protected by the First Amendment.

WAHL, Justice (concurring specially).

While I agree with the majority that the result reached in this case is correct, I come to the conclusion on much narrower grounds. I respectfully disagree with the majority opinion's characterization of "church," because it too narrowly defines "church" and "religion" for constitutional purposes.

This court's duty in reviewing tax cases has been defined in other cases. Decisions of this court indicate that a decision of the Tax Court will not be disturbed on appeal if it has any reasonable basis in law. *See Red Owl Stores v. Commissioner*, 264 Minn. 1, 5, 117 N.W.2d 401, 405 (1962); *Western Auto Supply Co. v. Commissioner*, 245 Minn. 346, 368, 71 N.W.2d 797, 811 (1955). "[T]he function of this court in reviewing a decision of the board of tax appeals involving questions of fact is to determine whether there is sufficient evidence to support the decision." *Miller v. Commissioner*, 240 Minn. 18, 20, 59 N.W.2d 925, 926 (1953) (citations omitted).

Whether an organization * is actually formed and operated as a tax-exempt institution is primarily a question of fact. *See Parker v. Commissioner*, 365 F.2d 792 (8th Cir. 1966), *cert. denied*, 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967); *Hammerstein v. Kelley*, 349 F.2d 928 (8th Cir. 1965); *Stevens Brothers Foundation v. Commissioner*, 324 F.2d 633, 638 (8th Cir. 1963), *cert. denied*, 376 U.S. 969, 84 S.Ct. 1135, 12 L.Ed.2d 84 (1964). In *Parker*, an entity known as the Foundation for Divine Meditation sought to establish itself as a tax-exempt religious organization for charitable contribution purposes under Internal Revenue Code § 501(c)(3). The exemption was denied. On appeal, the Eighth Circuit held:

Rather than urging upon its followers any particular theology or philosophy of life, the Church of the New Song appears to encourage a relatively non-structured and free-form, do-as-you-please philosophy, the sole purpose of which is to cause or encourage disruption of established prison discipline for the sake of disruption.
*Id.* at 260.

Whether or not an organization has a substantial nonexempt purpose, is, of course, a question of fact to be determined by the Tax Court. As a question of fact, the determination will not be disturbed by this Court unless the finding was clearly erroneous.

365 F.2d at 798.

Even if we decide that some aspects of the religious beliefs of the Ideal Life Church members must be evaluated, the type of consideration used by the Tax Court and by the majority in this court is inappropriate. The Tax Court and tax agencies are concerned with many kinds of tax fraud; therefore, the substance of the transaction or operation, not merely its form, must be examined for tax purposes. *See Weiss v. Stearn*, 265 U.S. 242, 254, 44 S.Ct. 490, 491, 68 L.Ed. 1001 (1924); Worthing, *"Religion" and "Religious Institutions" Under the First Amendment*, 7 Pepperdine L.Rev. 313, 352 (1980). The use of any definition does not necessarily prevent fraud; a clever person might be able to fit a fraudulent organization within even a carefully constructed definition. The goal is not to show that a particular activity is not a church but "that the beliefs asserted to be religious are not held in good faith by those asserting them, and that forms of religious organization were erected for the sole purpose of cloaking a secular enterprise with the legal protections of religion." *Founding Church of Scientology v. United States*, 409 F.2d 1146, 1162 (D.C.Cir.), *cert. denied*, 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969). *See* Worthing, *supra*, at 351–52. Although determining the sincerity of belief is a most sensitive undertaking, it has been accepted as a means of showing that an organization is entitled to tax-exempt status. *Valente v. Larson*, 637 F.2d 562 (8th Cir. 1981); *Founding Church of Scientology*, 409 F.2d at 1162; note, *Toward a Constitutional Definition of Religion*, 91 Harv.L.Rev. 1056, 1079–82 (1978); *cf. Wisconsin v. Yoder*, 406 U.S. 205, 219–29, 235, 92 S.Ct. 1526, 1535–40, 1543, 32 L.Ed.2d 15 (1972) (exemption from compulsory education); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (exemption from draft law).

The Tax Court evaluated the belief-sincerity of Ideal Life Church members. The court found that the primary, and perhaps the sole, purpose for incorporating the Ideal Life Church was to provide the Rossow family with the benefit of a tax-free home while maintaining the same use and control they had prior to incorporation. This finding of fact is not clearly erroneous and should not be overturned here. Furthermore, this finding requires the use of none of the factors enumerated by the Tax Court.

It is not true, as the majority asserts, that only a few jurisdictions have attempted to define "church" or related terms. Federal courts have been very active in this area. The number of cases in which courts have grappled with a definition is even larger once we recognize that "church" is used in the same fashion as a "denomination," "religion," or "religious organization" under the Internal Revenue Code and in a number of cases. Whelan, *"Church" in the Internal Revenue Code: The Definitional Problems*, 45 Fordham L.Rev. 885, 910, 923–25 (1977); Note, *Real Property Tax Exemption in New York: When is a Bible Society Not Religious?*, 45 Fordham L.Rev. 949 (1977).

A number of courts and commentators have sought to establish that the definition of church or religion used in free exercise cases is more expansive than that used for establishment clause purposes. *E. g.*, L. Tribe, *American Constitutional Law* § 14–6 at 827–28 (1978); *see Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). But the eloquent views of Justice Rutledge[1] on the

---

1. "Religion" appears only once in the [First] Amendment. But the word governs two prohibitions and governs them alike. It does not have two meanings, one narrow to forbid "an establishment" and another, much broader, for securing "the free exercise thereof."

unitary definition of religion, dissenting in *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), were not disputed by the majority of the Court. *Malnak v. Maharishi Mahesh Yogi,* 592 F.2d 197, 211 n. 51 (1979). (Adams, J., concurring).

The United States Supreme Court has held that it is constitutional under the establishment clause to provide property tax exemptions for churches and religious institutions. Such property exemptions are a matter of legislative grace. They neither advance nor inhibit the establishment of religion if equally applied. *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). Unequal application occurs when tax exemptions are accorded some "churches" and not others.

The 19th century definitions of religion were uniformly theistic and narrowly traditional. *See* Tribe, *supra,* at 826–27; *Malnak,* 592 F.2d at 207 (Adams, J., concurring). That traditional view has been rejected. *See, e. g., Welsh, Torcaso.* New definitions, however, have not been fully formed. It may even seem, as one commentator has suggested, that, even though objective facts and circumstances may be enumerated, the ultimate conclusion is based on a subjective judgment of what religion is in the "I know it when I see it and this isn't it" fashion, alluding to Justice Stewart's concurrence in *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964), dealing with pornography. S. Schwarz, *Limiting Religious Tax Exemptions: When Should The Church Render Unto Caesar?* 29 U.Fla.L.Rev. 50, 6.

Courts have sensed the constitutional inability to define religion, so:

> when they cannot avoid a decision, [they have] turn[ed] to some vague "man-in-the-street" idea of what "religion" should be: It involves prayer, and has something to do with a deity, etc. But a man-in-

the-street approach would surely have ruled out early Christianity, which seemed both subversive and atheistic to the religious Romans of the day. The truth is that one man's "bizarre cult" is another's true path to salvation, and the Bill of Rights was designed to safeguard minorities from the man-on-the-street's uncertain capacity for tolerance * * *.

Professor Harvey Cox of the Harvard Divinity School, *reprinted in* Tribe, *supra,* at 827 n.8. Dictionary definitions used by the majority are nothing more than "man-in-the-street" reflections by a dictionary publisher. Such definitions should not and cannot appropriately be used to prescribe a constitutional standard.

The Tax Court adopted an eight-factor test based on the criteria developed by the Internal Revenue Service for use in determining whether an organization is a church. Both the IRS and the Tax Court have said that an organization need not meet all the criteria. Some widely recognized religious bodies not only do not meet all, but do not meet many, of the criteria, e. g., Quakers and Christian Scientists. Worthing, *supra,* at 344–45 & n. 175. Neither this court's majority nor any other court has stated how few or how many of the criteria a group must meet in order to qualify as a church. It is important to note also that these criteria require an organization to be a developed denomination with patterns similar to those reflected in mainline churches and do not recognize denominations which deviate substantially. Furthermore, it may not be wise to define churches based on their developed states, since it is the early developing church that is most in need of constitutional protection. Worthing, *supra,* at 345.

Some courts have used analogies instead of strict definitions to find that groups were religious because their activities were similar to those of traditional churches.

"Thereof" brings down "religion" with its entire and exact content, no more and no less, from the first into the second guaranty, so that Congress and now the states are as broadly restricted concerning the one as they are regarding the other.

*Everson v. Board of Education,* 330 U.S. 1, 32, 67 S.Ct. 504, 519, 91 L.Ed. 711 (1947) (Rutledge, J., dissenting).

*Washington Ethical Society v. District of Columbia,* 249 F.2d 127 (1957); *Fellowship of Humanity v. County of Alameda,* 153 Cal.App.2d 673, 315 P.2d 394 (1957). In some cases, the beliefs were found to be "religious" because they held "parallel positions in the lives of their respective holders." *Seeger,* 380 U.S. at 166, 85 S.Ct. at 854. It is one thing to conclude, by analogy, that an organization or group of ideas is religious. It is quite a different thing to elucidate precisely what indicia are to be examined in making and justifying the analogy. *Malnak,* 592 F.2d at 207 (Adams, J., concurring).

The majority has not used analogies in examining the Ideal Life Church; it has used defined criteria instead. While the result in this case is not wrong, based on the insincerity of belief of the members and the use of the Rossow home as a home just as it was used before incorporation of the church, the factors used are unduly restrictive and traditional. I cannot agree that such a test is appropriate for use in protecting the important constitutional liberty of freedom of religion.